## IN THE UNITED STATES DISARICT COURT
## FOR THE DISARICT OF NEBRASKA

ROBERT RAY BAKER,

               **Plaintiff,**

   vs.

CAROLYN W. COLVIN,
**Acting Commissioner of the Social
Security Administration,**

               **Defendant.**

**8:14CV13**

**ORDER**

This is an action for judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner).[1]  Robert Ray Baker (Baker) appeals the Commissioner's decision denying Baker's application for disability insurance benefits (DIB) under Title II of the Social Security Act (Act), 42 U.S.C. §§ 401, et seq. and Supplemental Security Income (SSI) benefits under Title XVI of the Act, 42 U.S.C. §§ 1381, et seq.

Baker applied for benefits on March 30, 2009, alleging disability beginning October 31, 2008 (AR. 335-341, 342-344).  The Social Security Administration (SSA) denied benefits initially and again upon reconsideration (AR. 148, 150, 151, 153, 177-180, 185-188, 189-192).  Baker appealed the denials to an administrative law judge (ALJ), who held administrative hearings on March 3, 2011, February 15, 2012, October 25, 2012, and November 8, 2012 (AR. 31-70, 71-83, 84-113, 114-147).  On February 5, 2013, the ALJ determined Baker was not disabled within the meaning of the Act[2] (AR. 10-30).  The Appeals Council denied Baker's request for review on November 23, 2013 (AR. 1-7).  Baker now seeks judicial review of the ALJ's determination as it represents the final decision of the Commissioner.  **See** 42 U.S.C. § 405(g).

Baker filed a brief (Filing No. 19) in support of this administrative appeal.  The Commissioner filed the administrative record (AR.) (Filing Nos. 13, 14) and a brief (Filing No. 20) in opposition to Baker's appeal for benefits.  Baker filed a reply (Filing

---

[1] The parties consented to jurisdiction by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).  **See** Filing No. 18.
[2] The Appeals Council reversed and remanded an earlier decision by the ALJ (TR. 171-174).

No. 21) in opposition to the Commissioner's brief.  Baker appeals the Commissioner's decision, asking the decision be reversed and benefits awarded because:  (1) the ALJ failed to give sufficient weight to Baker's treating sources; (2) the ALJ failed to give weight to the Department of Veteran Affairs (VA) disability determination; (3) the ALJ committed reversible error in finding Baker's tinnitus was not severe; (4) the ALJ failed to properly evaluate Baker's pain when making an assessment of his Residual Functional Capacity (RFC); (5) the ALJ failed to properly account for Baker's obesity; (6) the ALJ's hypothetical question to a Vocational Expert (VE) was inaccurate and incomplete; and (7) the ALJ erred in finding Baker's testimony unreliable.  **See** Filing No. 19 - Brief p. 9-22.


## FACTUAL BACKGROUND

### A.   Medical History

Baker previously worked as a material handler, circuit board supervisor, wholesale sales representative, crane operator, and janitorial services supervisor (AR. 50, 485, 486).  While working as a material handler, Baker injured his back lifting floor joists on October 30, 2008 (AR. 492).  At the time of his application for benefits, Baker was fifty-two years old and fifty-six years old when the ALJ rendered his decision (AR. 23, 148, 335, 342).

The day after Baker injured his back, he sought treatment and was examined by Dennis O'Leary, M.D. (Dr. O'Leary) (AR. 492).  Dr. O'Leary diagnosed a lumbar strain and prescribed ibuprofen, in addition to suggesting Baker specifically avoid lifting weights over 15 pounds; bending more than 10 times per hour; pushing or pulling over 25 pounds of force; and squatting, kneeling, and sitting for any prolonged amount of time  (AR. 492-493).  Dr. O'Leary also advised Baker limit the use of his back in general (AR. 492-493).  Dr. O'Leary saw Baker three days later and reported Baker's symptoms had improved (AR. 494).  Dr. O'Leary also noted Baker was able to work "modified activity with acceptable tolerance." (AR. 494).

On November 1, 2008, Baker visited a VA emergency room, complaining of low back pain stemming from his on-the-job injury (AR. 546-547).  Scott Menolascino, M.D. (Dr. Menolascino), diagnosed a muscle strain or sprain and recommended Baker avoid

work for at least one week (AR. 546).  Once Baker returned to work, Dr. Menolascino advised he restrict any lifting to objects less than 10 to 15 pounds (AR. 546).  Dr. Menolascino instructed Baker to implement daily ice therapy and take ibuprofen and muscle relaxers as needed (AR. 546).

On November 14, 2008, Baker visited a VA facility for care related to his back injury and left forearm pain (AR. 540).  A physician's assistant assessed a back strain, and recommended an x-ray, physical therapy (PT), Acetaminophen, and Tramadol (AR. 541).  X-rays revealed mild degenerative disc disease (AR. 550-551).

On November 19, 2008, Baker began PT through the VA in an attempt to improve the pain he experienced in his back and left elbow (AR. 535-538).  Baker took muscle relaxers and participated in exercises, traction, and stretching (AR. 514-522, 528-29, 532-535).  Though Baker reported treatment was helpful, it did not eliminate his pain (AR. 514-522, 528-529, 532-535).

Baker sought care again at the VA for treatment of his back pain on December 16, 2008 (AR. 524-525).  Dale Davis, a physician's assistant (PA Davis) who treated Baker, reported Baker's uncontrolled conditions included hypertension, obesity, hyperlipidemia, and degenerative disc disease (AR. 525).  During this visit, Baker declined to enter a program to help him lose weight  (AR. 525).

Baker completed his PT at the VA on February 23, 2009; after a total of seventeen sessions (AR. 511-512).  Julie Ortman, DPT, his physical therapist, noted Baker was still experiencing some pain but believed it was manageable with therapeutic exercises and traction (AR. 512).

On March 11, 2009, Baker returned to the VA for care related to his back pain (AR. 508).  PA Davis treated Baker during his visit and categorized Baker's obesity, hyperlipidemia, and lower back strain as uncontrolled (AR. 509).  PA Davis again recommended weight loss programs, which Baker declined (AR. 509).  PA Davis determined all Baker's other health issues were controlled (AR. 508-509).

Glen Knosp, M.D. (Dr. Knosp), a state-agency physician, reviewed Baker's medical records on April 29, 2009, and completed an RFC Assessment (AR. 556-563). Based on the records, Dr. Knosp believed Baker could lift, push, or pull 20 pounds frequently and 10 pounds occasionally; stand or walk six hours in an eight-hour

workday;  and sit for six hours during the same period (AR. 557).  Dr. Knosp suggested Baker limit stooping and crouching and avoid concentrated exposure to extreme cold or heat and pulmonary irritants (AR. 558, 560).  Dr. Knosp also noted Baker's November 11, 2008, x-rays exhibited no evidence of an acute injury and he believed Baker's credibility was "partial" based on his records and corresponding pain reports (AR. 563). On July 10, 2009, Jerry Reed, M.D. (Dr. Reed), also a state-agency physician, affirmed Dr. Knosp's findings (AR. 643).

On June 15, 2009, additional x-rays of Baker's spine revealed mild multilevel degenerative disc disease (AR. 632). Four days later, PA Davis referred Baker to neurosurgery for further evaluation, given his back pain's lack of improvement (AR. 634-635).

On July 9, 2009, Baker underwent Magnetic Resonance Imaging (MRI) of his spine (AR. 645).  Matthew White (White), the primary interpreting radiologist, detected a mild diffuse disc bulge, moderate facet degenerative changes, and no nerve root impingements (AR. 645-646).  White reported there was "epidural fat that contribute[d] to narrowing of the spinal canal" at one level (AR. 645-646).  Stephan Woodman, M.D. (Dr. Woodman), the staff radiologist, verified White's findings (AR. 646).

On July 20, 2009, Baker called the VA and insisted PA Davis complete his disability paperwork because if neurosurgery filled it out, it "would mess everything up" (AR. 779).  Baker also stated he wanted to be seen earlier by neurosurgery than originally scheduled (AR. 779).

Julie Sunderman, APRN (Sunderman), and Arun-Angelo Patil, M.D. (Dr. Patil), eventually examined Baker as part of a neurological consultation on August 4, 2009 (AR. 657-660).  Sunderman noted Baker reported exercising 15 hours per week and both his gait and neurological responses were normal, except for mildly decreased sensation in his right thigh (AR. 658-659).  Baker's strength and reflexes rated 5/5 (AR. 659).  Sunderman recommended Baker stop wearing a belt, he engage in better diabetic management, lose weight, and take anti-inflammatory medications (AR. 659). Sunderman and Dr. Patil agreed the lumbar MRI did not reveal any "significant findings" (AR. 659).  The following day, Baker called the VA seeking a second opinion and to speak with PA Davis because he did not agree with Sunderman and Dr. Patil's

4

recommendation he lose weight in order to alleviate his back pain (AR. 773). On August 21, 2009, Sunderman filed an addendum to her report after talking with Baker (AR. 660). She noted Baker questioned her report and asked she clarify Baker is in a great deal of pain (AR. 660).

On August 27, 2009, Baker returned to PA Davis with complaints of back pain (AR. 656). On examination, PA Davis reported, "It took marked encouragement [for Baker] to gain/utilize full strength and [Baker] stated he was having back and right thight [sic] pain while doing this." (AR. 657). Baker also displayed tenderness in his back but his neurology, muscle coordination, and gait were roughly intact (AR. 657). His uncontrolled conditions included hypertension, obesity, hyperlipidemia, diabetes, and back pain (AR. 657).

On September 4, 2009, PA Davis again treated Baker for his back pain (AR. 655-56). On examination, Davis observed tenderness in Baker's back, but his extremities showed no signs of edema and his nerves, muscle coordination, and gait were intact (AR. 655). As part of his report, PA Davis adopted verbatim what he had written during Baker's August 27, 2009, examination: "It took marked encouragement [for Baker] to gain/utilize full strength and [Baker] stated he was having back and right thight [sic] pain while doing this" (AR. 655). Baker's uncontrolled conditions included hypertension, obesity, hyperlipidemia, diabetes, and back pain (AR. 655-656). Baker again declined to participate in diabetes and weight-loss programs (AR. 656).

On September 9, 2009, PA Davis completed a Lumbar Spine RFC Questionnaire (AR. 663-667). Therein, he identified clinical findings such as palpable muscle tenderness in Baker's back and loin and mildly decreased sensation in his right thigh as the basis for his opinions (AR. 663). Baker's relevant symptom was back pain (AR. 663). PA Davis concluded Baker was not a malingerer (AR. 663). PA Davis' report indicated Baker did not have positive straight leg raising; an abnormal gait; reflex changes; crepitus; swelling; muscle spasm, atrophy, weakness; or gastritis (AR. 664). He noted Baker engaged in intentional weight loss and had difficulty sleeping (AR. 664). He believed Baker's symptoms would "occasionally to frequently" interfere with his

attention and concentration[3] (AR. 664).  PA Davis reported Baker could walk only three blocks; sit for only 30 minutes; and stand for only 20 minutes at a time (AR. 664, 665).  However, PA Davis stated Baker informed him Baker could stand or walk for six hours total in a workday, though it had not been attempted (AR. 665).  PA Davis opined Baker would need to periodically alter positions and need to take unscheduled breaks throughout the day (AR. 665).  He reported Baker could occasionally lift up to 20 pounds, twist, stoop, crouch, and climb stairs, but rarely climb ladders and stoop (AR. 666).  Baker was also limited with respect to fine and gross manipulation with his hands (AR. 666).  PA Davis ultimately believed Baker would be absent from work approximately four days per month due to his symptoms (AR. 666).[4]

On September 29, 2009, Baker sought urgent care at the VA, complaining of right-side numbness and tingling over the prior two days (AR. 746, 747).  Baker reported he had recently stopped taking his back pain medication as a trial to test his symptoms (AR. 747).  Veena Kumaravel, a resident physician, ordered an MRI of Baker's back (AR. 749).

On September 30, 2009, John Bertoni, M.D. (Dr. Bertoni), a VA staff physician, examined Baker based on his complaints of right-side tingling and numbness for the previous four days (AR. 693-697).  Dr. Bertoni's examination yielded normal results, save for a 2/4 rating in his tendon reflexes (AR. 695-96).  Dr. Bertoni could not rule out a stroke (AR. 697).  The same day, Dr. Woodman interpreted x-rays of Baker's cervical spine, which he believed revealed Baker was suffering from multilevel degenerative cervical spondylosis and moderate degenerative disc disease at C3-C4 and C4-C5 levels (AR. 674).

On October 6, 2009, Baker reported to VA providers his tingling and numbness had improved and he was "almost back to baseline" (AR. 687).  On examination, Baker appeared nervous but his attention and concentration were intact; his cranial nerves were normal; his muscle strength and tone was normal, though his reflexes were 2/4;

---

[3] PA Davis' handwritten notations on the form are difficult to decipher, making it unclear how he arrived at this conclusion.
[4] Baker also saw PA Davis on September 12, 2009 (AR. 758).  According to PA Davis' notes, his assessment and impressions of Baker remained unchanged from Baker's previous visit on September 4, 2009, though PA Davis did prescribe additional medication for diabetes management (AR. 758-759).

and he could walk normally and displayed normal coordination (AR. 688).  Baker's physicians noted an MRI showed potential mild small vessel cerebrovascular disease and advised Baker to continue his medications and control his risk factors (AR. 688).

On August 19, 2010, Baker returned to the VA for treatment by Christine Mitchell, M.D. (Dr. Mitchell), related to his myofascial back pain (AR. 868-869).  Dr. Mitchell noted Baker was not taking his diabetes medication nor checking his blood sugar levels regularly, but a physical examination yielded normal results (AR. 869).  Dr. Mitchell refilled Baker's muscle relaxer prescription and recommended lifestyle modifications (AR. 870-871).  One month later on October 19, 2010, x-rays of Baker's right foot, taken by the VA, showed no abnormalities (AR. 806).

On October 28, 2010, Baker sought care at the VA for his hypertension (AR. 865-866).  Dr. Mitchell treated Baker and determined his hypertension was under control (AR. 867). Dr. Mitchell also ordered an audiology consultation upon Baker's complaints of hearing loss (AR. 867).

Baker completed a hearing test on November 12, 2010 (AR. 854).  The results indicated moderately severe sensorineural hearing loss from 500 to 2000 Hz in the right ear and moderately severe to mild sensorineural hearing loss from 3000 to 4000 Hz in the left ear (AR. 854).  An audiologist issued Baker a hearing aid for high-frequency hearing loss (AR. 833-835).

On November 23, 2010, Dr. Eric Sluiter, DPM (Dr. Sluiter), a VA podiatrist, examined Baker in connection with his complaints of right foot pain (AR. 830).  The examination results were normal, though Baker complained of pain upon palpation (AR. 831).  Dr. Sluiter assessed pain with a possible stress fracture and a history of gout (AR. 831).  On November 24, 2010, a VA provider issued Baker an orthotic shoe (AR. 827).

On December 4, 2010, Baker participated in an audiology examination at the VA (AR. 852-853).  The assessing audiologist noted his 1973 enlistment examination showed mild high frequency hearing loss (AR. 852).  Testing revealed hearing loss was present and Baker stated he has trouble hearing background noise and when in crowds (AR. 854).  Baker reported he believed his tinnitus began during service and has remained with him since (AR. 853).

On December 9, 2010, Dr. Mitchell reported "[Baker] states that he is filing for disability and would like to be tested for dyslexia . . . [Baker] reports that he has had trouble reading with distractions as well as seeing things backwards since the 4th or 5th grade" (AR. 849-850).   Dr. Mitchell assessed possible dyslexia and recommended further testing (AR. 852).

On December 28, 2010, Lori Armstrong, Ph.D. (Dr. Armstrong), a VA psychologist, conducted a cognitive evaluation of Baker (AR. 814-817, 837-839).   The results were normal (AR. 839).   On January 4, 2011, Baker underwent memory testing at the VA based on his own anxiety regarding dementia (AR. 817-825).   Dr. Armstrong conducted the testing, which revealed no significant cognitive deficits, but concluded Baker was likely malingering and possibly feigning his symptoms of memory impairment (AR. 825).   As part of a discussion regarding general medical issues, Baker informed Dr. Armstrong he was losing weight and his pain was well-controlled (AR. 819).

On January 26, 2011, Baker met with Isaac Witkowski, M.D. (Dr. Witkowski), in reference to his disability claim pending before the VA (AR. 876-889).   Dr. Witkowski reported Baker suffered from chronic mechanical low back strain with multilevel degenerative disc disease and right leg sciatica (AR. 888).   Dr. Witkowski concluded Baker's pain interfered with all daily activities and his condition likely precluded employment (AR. 889).

On January 27, 2011, Baker met with Dr. Mitchell to discuss discrepancies in his medical records (AR. 890-895).   Baker questioned why his most recent foot x-rays did not show evidence of a prior fracture and explained a three-year history of back spasms had not been properly included in his file (AR. 894-895).   Baker had his foot x-rayed again and the interpreting physician reported there was evidence of potential degenerative joint disease or, alternatively, evidence of a prior fracture (AR. 913).

On March 2, 2011, the VA granted Baker service connected disability benefits for tinnitus and bilateral hearing loss (AR. 481).   The VA also granted Baker a non-service connected pension for the following disabilities:  right foot condition, chronic mechanical low back strain with multilevel degenerative disc disease, diabetes mellitus type II, myofascial pain syndromes, hypertension NOS, erectile dysfunction, myocardial infarction with dyspnea on exertion, dermatitis, and meralgia paresthetica (AR. 484).

The VA found these non-service connected disabilities combine for a 70% disabling disability (AR. 484).

On March 28, 2011, Meryl Severson II, M.D. (Dr. Severson), performed a consultative evaluation of Baker (AR. 896-908).  Dr. Severson observed Baker "walked easily with a bouncy stride," but had "some difficulty" getting on and off the examination table; shifted positions during the interview; and held his back stiffly (AR. 897-898).  A complete physical examination yielded normal results (AR. 898).  Dr. Severson assessed degenerative disc disease with mild degenerative facet changes; chronic back pain; diabetes; hypertension; and hyperlipidemia (AR. 898).  Dr. Severson concluded Baker could lift and carry up to 10 pounds frequently; sit for 25 minutes at a time and 175 minutes in a workday; stand for the same durations; walk for up to one block with 10 pounds in each hand; climb stairs with a hand rail; use his arms as needed; operate a vehicle for 45 minutes; stoop, kneel, or crouch; and perform manipulative tasks normally (AR. 896-899, 901-906).  Dr. Severson believed weight loss would improve Baker's ability to sit, stand, or walk (AR. 899).  On May 22, 2012, Severson filed an addendum to his report, stating based on an eight-hour workday, Baker could walk for 60 minutes and sit or stand for 205 minutes each (AR. 987).

On June 20, 2011, Baker met with Patricia Newman, Ph.D. (Dr. Newman), a state-agency psychologist (AR. 957).  Baker underwent a battery of cognitive tests and Dr. Newman concluded Baker displayed no severe mental impairments (AR. 957-969).  Dr. Newman also reported "[Baker] was viewed as maybe feigning [symptoms]" (AR. 969).

On July 14, 2011, James Bane, M.D. (Dr. Bane), a state-agency physician, completed an RFC assessment and found Baker could lift 20 pounds occasionally and 10 pounds frequently; stand or walk for approximately six hours in an eight-hour workday; and sit for about six hours in the same period (AR. 971-980).  Dr. Bane reported Baker could occasionally climb, balance, stoop, kneel, crouch, and crawl (AR. 973).  He noted Baker's credibility was doubtful due to his malingering on the VA's memory testing and also because Baker's allegations were greater than expected based on pathology (AR. 980).  Ultimately, Dr. Bane concluded Baker possessed the ability to work (AR. 980).

On January 13, 2012, Baker requested a renewal of his muscle relaxer prescriptions, explaining he had not taken his medication in months but had recently experienced increased back pain (AR. 1056).   Dr. Mitchell issued the requested prescription (AR. 1056).

On March 9, 2012, Dr. Mitchell evaluated Baker for complaints of lower back pain, for which he occasionally took a muscle relaxer (AR. 1048).  Baker requested use of the VA's traction table because he said it helped alleviate his back pain (AR. 1048).  Baker denied any other complaints during the visit (AR. 1048).  Dr. Mitchell declined to make any changes to his treatment plan and scheduled a follow-up appointment for a year later, unless problems arose (AR. 1049-1050).

On April 4, 2012, Baker underwent a physical therapy evaluation to treat his chronic back pain (AR. 1013-16).  On examination, Baker complained of pain with range of motion and rated 4/5 in terms of strength (AR. 1014).   He also had decreased flexibility (AR. 1014).  Baker requested traction therapy because it had worked for him in the past (AR. 1015, 1043).  Baker's physical therapist acquiesced to his request, but noted traction therapy was not designed to address his type of back pain (AR. 1015, 1043).  Baker discontinued therapy in May, 2012 (AR. 1040).

On August 28, 2012, Baker visited the VA complaining of neck pain (AR. 1033-1034).  A provider noted cervical node enlargement accompanied by tenderness (AR. 1034).

On September 5, 2012, Baker went to the VA complaining of nausea and dizziness, which he thought to be a medicinal side effect (AR. 1026-1027).  Baker did not monitor his blood sugars (AR. 1027).  Baker's doctor submitted a blood work order, adjusted his medications and ordered him a blood sugar monitor (AR. 1028).   Dr. Mitchell subsequently requested a Computerized Tomography (CT) scan (AR. 1029).  A September 18, 2012, CT scan of Baker's abdomen was unremarkable (AR. 993-994).

On September 19, 2012, Baker reinitiated physical therapy to treat his back pain (AR. 1006-1011, 1019).  On examination, Baker complained of pain upon palpation and range of motion testing (AR. 1010).  On September 27, 2012, Baker reported he felt much better after heat therapy and traction, but his pain and muscle tightness had returned to a rating of 7/10 (AR. 1017).

**B.     Administrative Hearings**

The ALJ held an administrative hearing on November 8, 2012, which Baker attended, accompanied by counsel (AR. 31-70).   Baker's counsel clarified none of Baker's alleged mental impairments were at issue (AR. 35).   Baker testified traction eased his thoracic back pain and he continued to use the traction table at the VA two times per week (AR. 36-37).   The ALJ queried whether a hypothetical claimant with the ability to lift and carry up to 20 pounds frequently; sit for 25 minutes at a time for a total of 205 minutes; stand for the same amount of time; walk for a total of 60 minutes; require 10 minutes of additional break time; walk a block with 10 pounds in each hand; take stairs with a handrail; use his arms as necessary; operate a vehicle for 45 minutes; and stoop, kneel, crouch, and manipulate objects without impairment could perform any of Baker's past relevant work  (AR. 54-55, 57).   The testifying Vocational Expert (VE) stated she believed an individual able to perform the above mentioned tasks was employable as a wholesale sales representative and in some circumstances a circuit board supervisor or information clerk (AR. 58).

At a previous hearing on February 15, 2012, Baker testified he was able to shower, make coffee, and engage in traction (AR. 93).   He tried to perform light exercises and stretches (AR. 93).   He used his traction machine whenever his back locked up, which ranged from 3 to 7 days per week (AR. 94).   Lying on the floor relieved his pain (AR. 95).   Baker stated he could only sit for approximately 10 minute intervals (AR. 95).   He said he took a muscle relaxer to alleviate his symptoms, which made him feel nauseous and "drugged" (AR. 96).   Baker testified his back pain persisted at a level of 7 or 8 (AR. 98).   Baker also testified he experienced occasional tingling in his right leg (AR. 98).   He said he could shop for groceries, but sometimes had to use a motorized cart (AR. 98-99).   Baker had applied for jobs, but had not been hired (AR. 100).   He stated he could not watch movies because he could not sit very long (AR. 100).   Baker testified his tinnitus reduced his concentration (AR. 100).   He said he could bend over, but had difficulty reaching the floor or tying his shoes (AR. 101).   He did not think using his TENS unit helped (AR. 105).   Baker stated he had lost approximately 35 pounds (AR. 107).

**THE ALJ'S DECISION**

The ALJ issued his final decision on February 5, 2013, in which he determined Baker was not disabled within the meaning of the Act (AR. 14, 23).  The ALJ framed the issue as to whether Baker was disabled under sections 216(i), 223(d), and 1614(a)(3)(A) of the Act (AR. 13).  The ALJ defined disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or last for a continuous period of not less than twelve months (AR. 13).  **See** 42 U.S.C. § 423; 20 C.F.R. § 404.1505.

The ALJ must evaluate a disability claim according to the sequential five-step analysis established by the Social Security regulations.  **See** 20 C.F.R. § 404.1520(a)-(f); *Phillips v. Astrue*, 671 F.3d 699, 701 (8th Cir. 2012).

> To determine disability, the ALJ follows the familiar five-step process, considering whether: (1) the claimant was employed; (2) [he] was severely impaired; (3) [his] impairment was, or was comparable to, a listed impairment; (4) [he] could perform past relevant work; and if not, (5) whether [he] could perform any other kind of work.

*Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010).  More specifically, the ALJ examines:

> [A]ny current work activity, the severity of the claimant's impairments, the claimant's residual functional capacity and age, education and work experience.  **See** 20 C.F.R. § 404.1520(a).  If the claimant suffers from an impairment that is included in the listing of presumptively disabling impairments (the Listings), or suffers from an impairment equal to such listed impairment, the claimant will be determined disabled without considering age, education, or work experience.  If the Commissioner finds that the claimant does not meet the Listings but is nevertheless unable to perform his or her past work, the burden of proof shifts to the Commissioner to prove, first, that the claimant retains the residual functional capacity to perform other kinds of work, and, second, that other such work exists in substantial numbers in the national economy.  A claimant's residual functional capacity is a medical question.

*Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000) (internal citations omitted).  "If a claimant fails to meet the criteria at any step in the evaluation of a disability, the process ends and the claimant is determined to be not disabled."  *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citation omitted); **see** *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010).

In this case, the ALJ followed the appropriate sequential analysis.  At step one, the ALJ noted Baker did not engage in substantial gainful activity since October 31, 2008 (AR. 15).   At step two, the ALJ determined Baker had the following severe impairments as defined by Social Security regulations:   Low back strain; mild degenerative disk disease at L2-3 and L3-4; history of coronary artery disease; diabetes mellitus; obesity; and hypertension (AR. 15).  The ALJ determined the above mentioned severe impairments caused significant limitations on Baker's ability to do basic work related activities (AR. 16).   Additionally, the ALJ found Baker did not have a severe mental impairment (AR. 16).

At the third step, the ALJ determined although Baker had some symptoms relating to physical disorders limiting his ability to perform a full range of work, the necessary elements and severity were not sufficiently documented in the record to meet or equal the requirements of any physical impairments listed in the Act (AR. 16).  Accordingly, the ALJ concluded Baker did not have an impairment or combination of impairments meeting or medically equivalent to one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 419.926) (AR. 16).  The ALJ determined Baker's musculoskeletal, diabetic, cardiovascular, and obesity impairments did not meet the necessary requirements for listing-level severity (AR. 16).

Before proceeding to step four of the sequential evaluation process, the ALJ determined Baker's ability to perform work-related functions, defined as Baker's RFC, was limited to the following:

> light work as defined in 20 C.F.R. § 404.1567(b) except as follows:   He could lift and carry up to 20 pounds on a frequent basis.  He could sit for 25 minutes at a time for a total of 205 minutes (3 hours, 25 minutes) in an 8-hour day. He could stand for 25 minutes at a time for a total of 205 minutes (3 hours, 25 minutes) in an 8-hour day.  He could

> walk 1 block at a time, carrying 10 pounds in each hand for a total of 60 minutes.  He could alternate sitting, standing, and walking as needed and complete an 8-hour workday.  During the course of a regular day he could have one break of up to 10 minutes in addition to normal break periods, to go the bathroom or get a drink.  The claimant could operate a motor vehicle for 45 minutes at a time; he could drive more than one time in a day.  He could negotiate stairs with a handrail and use his arms over his head as necessary.  He has no limitation in performing fine or coarse motor tasks with his hands.  He could stoop, kneel, and crouch.

(AR. 16, 17).

The ALJ explained his RFC determination was based on a consideration of all Baker's symptoms and the extent to which the symptoms could reasonably be accepted as consistent with objective medical evidence and other evidence based on the requirements of 20 C.F.R. §§ 404.1529 and 416.929 and Social Security Rulings (SSR) 96-4p and 96-7p (AR. 17).  In his decision, the ALJ followed a two-step process used to consider the importance of a claimant's symptoms in making an RFC determination (AR. 17).  In the first step, the ALJ must determine whether there is any underlying medically determinable physical impairment present that can reasonably be expected to produce the claimant's pain or other symptoms (AR. 17).  Second, once an underlying physical impairment that can reasonably be expected to produce the claimant's pain or other symptoms has been shown, the ALJ is required to determine the degree to which they limit the claimant's functioning (AR. 17).  To the extent a statement about the intensity, persistence, or limiting nature of pain or other symptoms is not substantiated by objective evidence, the ALJ must make a finding on the credibility of the statement based on the entire case record (AR. 17).

The ALJ gave substantial weight to Dr. Severson's opinions based on Dr. Severson's examination of Baker on March 28, 2011 (AR. 17).  The ALJ asked Dr. Severson to clarify his findings from the March 28, 2011, examination of Baker because his initial assessment did not consider Baker's abilities relevant to an eight-hour workday (AR. 17, 18).  The ALJ reasoned Dr. Severson's amended report on March 31, 2011, simply acted as a clarification of the original (AR. 17).  The ALJ noted Dr. Severson is an acceptable medical and treating source (AR. 18).  The ALJ explained he

gave greater weight only to Dr. Severson's original narrative within his report and not to any portions containing information from a checklist (AR. 18).

The ALJ gave great weight to the state agency's opinion Baker could perform light work (AR. 18).  **See** SSR 96-6p.  The ALJ reasoned Dr. Knosp's opinion, affirmed by Dr. Reed, was consistent with Dr. Severson's opinion (AR. 18).  However, the ALJ opted to give little weight to the state agency's assertion Baker could perform a supervisory role because the VE's testimony established Baker would be unable to perform his past, light job as a supervisor (AR. 18-19, 45).  Accordingly, the ALJ gave greater weight only to the state agency's finding Baker could participate in light work (AR. 18-19).  Furthermore, the ALJ noted the various rationales behind the state agency's findings (AR. 19).  Specifically, the ALJ referenced Dr. Knosp's opinion and Dr. Reed's concurrence, which dictated the medical record did not support the degree of limitations the claimant alleged in terms of walking, standing, and sitting (AR. 19).

The ALJ analyzed additional medical evidence and gave little weight to both Dr. Witkowski's and PA Davis' opinions (AR. 20).  The ALJ opined Dr. Witkowski's opinion resembled a recitation of Baker's complaints rather than one premised on objective clinical findings (AR. 20).  The ALJ prescribed little weight to PA Davis' opinion as well, explaining he is a not an acceptable medical source, nor was his opinion supported by other substantial medical evidence (AR. 20).

In making his decision, the ALJ found persuasive Baker's ability to complete daily activities (AR. 21).  The ALJ explained Baker's testimony from previous hearings established he was capable of personal care, preparing meals, handling his medications, and exercising, in addition to completing traction therapy on his own (AR. 21).  The ALJ found Baker lacked credibility, noting Baker's complaints were inconsistent with Baker's RFC assessment, his testimony on November 8, 2012, concerning muscle relaxers was contrary to his medical records, and Dr. Armstrong's report specifically indicated she believed Baker was exaggerating claims of frequent memory loss (AR. 21).  Ultimately, the ALJ concluded Baker's symptoms and impairments were not as severe as Baker alleged and as a result, the ALJ determined Baker was not disabled (AR. 22-23).

**STANDARD OF REVIEW**

A district court is authorized jurisdiction to review a decision to deny disability benefits pursuant to 42 U.S.C. § 405(g).  A district court is to affirm the Commissioner's findings if "supported by substantial evidence on the record as a whole."  *Young v. Astrue*, 702 F.3d 489, 491 (8th Cir. 2013).  Substantial evidence is defined as less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision.  **See** *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010); **see also** *Minor v. Astrue*, 574 F.3d 625, 627 (8th Cir. 2009) (noting "the 'substantial evidence on the record as a whole' standard requires a more rigorous review of the record than does the 'substantial evidence' standard").  "If substantial evidence supports the decision, then [the court] may not reverse, even if inconsistent conclusions may be drawn from the evidence, and even if [the court] may have reached a different outcome."  *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010).  "[I]t is the court's duty to review the disability benefit decision to determine if it is based on legal error."  *Nettles v. Schweiker*, 714 F.2d 833, 835-36 (8th Cir. 1983).  The court reviews questions of law de novo.  **See** *Miles v. Barnhart*, 374 F.3d 694, 698 (8th Cir. 2004).  Findings of fact are considered conclusive if supported by substantial evidence on the record as a whole.  **See** *Nettles*, 714 F.2d at 835; *Renfrow v. Astrue*, 496 F.3d 918, 920 (8th Cir. 2007).  Furthermore, "[the court] defer[s] to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence."  *Pelkey*, 433 F.3d at 578 (**quoting** *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)).

**DISCUSSION**

A.    **Dr. Witkowski and PA Davis**

Baker argues the ALJ failed to give sufficient weight to his treating medical sources.  **See** Filing No. 19 - Brief p. 9-12.  Specifically, Baker argues the ALJ did not afford proper weight to Dr. Witkowski and PA Davis' findings and opinions when calculating his RFC.  *Id.*

"A treating physician's opinion is given controlling weight if it is demonstrable by medically acceptable clinical and laboratory diagnostic techniques and is not

inconsistent with other substantial evidence in a claimant's case record." **Halverson v. Astrue**, 600 F.3d 922, 929 (8th Cir. 2010); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). A treating source is a "physician, psychologist, or other acceptable medical source who [is currently], or has provided [the claimant], with medical treatment or evaluation and who [currently has], or has had, an ongoing treatment relationship with [the claimant]." 20 C.F.R. § 404.1502.  The commissioner "may consider an acceptable medical source who has treated or evaluated [the claimant] only a few times or only after long intervals (e.g., twice a year) to be [the claimant's] treating source if the nature and frequency of the treatment or evaluation is typical for [the claimant's] condition(s)." **Id.**  Acceptable medical sources are defined as:

> 1. Licensed physicians (medical or osteopathic doctors);
>
> 2. Licensed or certified psychologists . . . ;
>
> 3. Licensed optometrists . . . ;
>
> 4. Licensed podiatrists . . . ; and
>
> 5. Qualified speech-language pathologists.

20 C.F.R. § 404.1513(a).  In addition to assessing the opinions of acceptable medical sources, the ALJ **may** also account for the opinions of "other sources."  **See** 20 C.F.R. § 404.1513(d)(1)-(4).   Other sources include nurse practitioners, physician assistants, audiologists, and therapists.  **Id.**; **see also Lacroix v. Barnhart**, 465 F.3d 881, 885-86 (8th Cir. 2006).

A non-treating source is defined as "a physician, psychologist, or other acceptable medical source who has examined [the claimant] but does not have, or did not have, an ongoing treatment relationship with [the claimant]."  20 C.F.R. § 404.1502. When an opinion is not from a treating source, the ALJ is entitled to weigh it among other medically related opinion evidence using the criteria set forth in 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).  Relevant factors include:

> 1.  Whether the expert examined the claimant;
> 2.  Whether and to what extent the expert treated the claimant;
> 3.  Whether the opinion relies upon probative evidence and provides a persuasive rationale;
> 4.   The consistency of the opinion with the record as a whole;

5.  The specialization, if any, of the medical source; and
6.  Any other relevant considerations, including the source's familiarity with the Commissioner's standards and the extent to which the source is familiar with the case record.

20 C.F.R. §§ 404.1527(c), 416.927(c).

Here, the ALJ was not required to afford controlling weight to the opinions of Dr. Witkowski or PA Davis because neither qualified as treating sources.  For non-opinion evidence, the ALJ is entitled to weigh the evidence provided by Dr. Witkowski and PA Davis against other inconsistent evidence in the record to aid in making a disability determination.  **See** 20 C.F.R. § 404.1520b(b).

Dr. Witkowski, a physician, is clearly an acceptable medical source.  However, Dr. Witkowski evaluated Baker only one time as part of a VA benefits consultation.  **See** AR. 876-889.  There is no evidence in Dr. Witkowski's report or elsewhere in the record indicating Dr. Witkowski ever treated Baker again, nor were there any notes in the report contemplating a follow-up examination.  Further, Baker's repeated visits to the VA for chronic back issues requiring frequent treatment and evaluation demonstrates his medical condition required more attention than a single visit to Dr. Witkowski.  One visit in this scenario can hardly effectuate the ongoing treatment relationship contemplated by § 404.1502.  **See *Proctor v. Astrue***, 766 F. Supp. 2d 960, 990 (W.D. Mo. 2011).  As a result, Dr. Witkowski's opinion is not of a "treating source."  Rather, he is a "non-treating source," and his opinion is subject to scrutiny among other medically relevant opinion evidence.  **See** 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

The ALJ analyzed Dr. Witkowski's opinion and concluded it was not constructed from probative evidence, but merely evinced a restatement of Baker's symptoms.[5]  **See** AR. 20; ***Gates v. Astrue***, 627 F.3d 1080, 1082 (8th Cir. 2010)  (finding no error in ALJ's decision to provide little weight to doctor's opinion prefaced largely on the claimant's re-statement of his symptoms).   The ALJ reasoned Dr. Witkowski's opinion was not

---

[5] In his brief, Baker asserts the ALJ should have re-contacted Dr. Witkowski to resolve any ambiguities or request clarification regarding his report, yet fails to elaborate why.  **See** Filing No. 19 - Brief p. 12.  In any event, this contention is misplaced.  Not only was Baker seen by numerous physicians and medical professionals, there is nothing in the record to suggest there was insufficient information from which the ALJ could make a determination as to Baker's disability status.  **See *Martise v. Astrue***, 641 F.3d 909, 927 (8th Cir. 2011) (explaining an ALJ is required to re-contact a provider when the record as a whole is insufficient to render a disability decision).  Accordingly, the ALJ was not required to re-contact Dr. Witkowski.

entitled to great weight because Dr. Witkowski examined Baker only once and his opinion was based on Baker's subjective statements relating his back pain and not on clinical findings.[6]  **See** AR. 20.  Dr. Witkowski's report specifically noted "no testing was performed today," yet Dr. Witkowski opined Baker's condition would likely prohibit employment "because of the level of back pains and associated right-side sciatica that [Baker] complains of."  **See** AR. 888-889.  Additionally, evaluations of Baker by two different physicians, Drs. Bane and Severson, produced opinions differing from that of Dr. Witkowski.  **See** AR. 896-906, 980, 987.  Because Dr. Witkowski was a non-treating source, other experts came to different conclusions regarding Baker's ailments and disability status, and there is evidence Dr. Witkowski's report and recommendation was premised on Baker's own complaints, this court will not disrupt the ALJ's decision to provide little weight to Dr. Witkowski's opinion.

Conversely, PA Davis treated Baker with regularity, evaluating him roughly every three months.  **See** AR. 663.  However, physician's assistants are listed under "other sources" and are not considered "acceptable medical sources."  20 C.F.R. § 404.1513(d)(1); **see also *Lacroix***, 465 F.3d at 885-86.  An "other source" opinion may be used to show the severity of an impairment and how it affects the individual's ability to function, but may not be used to establish an impairment.  **See** 20 C.F.R. § 404.1513(d); SSR 06-3p.  However, "[i]n determining what weight to give 'other medical evidence,' the ALJ has more discretion and is permitted to consider any inconsistencies found within the record."  ***Raney v. Barnhart***, 396 F.3d 1007, 1010 (8th Cir. 2005) (**citing** 20 C.F.R. § 416.927(d)(4)).

Here, PA Davis is not an acceptable medical source and the ALJ is not required to afford his opinion controlling weight.  In fact, the ALJ chose not to give PA Davis' opinion great weight, stating PA Davis' opinion Baker would need to miss four days of work a month due to his back ailment was "not supported by his progress notes" and was "contradicted by substantial medical evidence of record."  **See** AR. 20.  The reports

---

[6] Even if Dr. Witkowski was a treating source, the ALJ's determination not to give his opinion greater weight was acceptable.  "[A] treating physician's opinion deserves no greater respect than any other physician's opinion when the treating physician's opinion consists of nothing more than vague, conclusory statements."  ***Charles v. Barnhart***, 375 F.3d 777, 783 (8th Cir. 2004).  Here, Dr. Witkowski's report and recommendation was simply a recitation of Baker's complaints with little to no clinical corroboration, further demonstrating the ALJ's decision not to afford Dr. Witkowski's opinion great weight was acceptable.

and opinions of Drs. Severson, Bane, Knosp, and Reed all support this assertion by indicating either a lack of clinical evidence consistent with the level of Baker's reported pain, or by advising Baker possessed adequate physical capabilities.[7]  **See** AR. 17, 19. As to PA Davis' reports, the ALJ was permitted to assess them in light of their inconsistencies with the record as a whole, including the findings and opinions of other providers.  The inconsistencies between PA Davis' reports and numerous providers gave the ALJ an adequate basis to give little or no weight to the reports of PA Davis. Consequently, the ALJ's determination not to provide greater weight to PA Davis' reports was appropriate.

For the reasons stated above, there was substantial evidence for the ALJ to afford less than great weight to the opinions of both Dr. Witkowski and PA Davis.  There was also substantial evidence for the ALJ to conclude the record as a whole did not support the medical evidence included within the reports prepared by either Dr. Witkowski or PA Davis.

## B.    VA Disability Determination

Baker asserts the ALJ erred by failing to account for the VA's disability determination.  **See** Filing No. 19 - Brief p. 13.

Claimants are entitled to use disability determinations made by separate governmental agencies as evidence of disability.  20 C.F.R. § 404.1512(b)(5).  The presiding ALJ is required to address these outside determinations, though the ALJ remains free to formulate his own decision as to whether the claimant is disabled.  **See** SSR 06-3p p. 6, 7 (Aug. 9, 2006); ***Brown v. Colvin***, --- F. Supp. 2d. ---, 2014 WL 199839, at * 6 (D. Neb. Jan. 16, 2014) (**citing *Hamel v. Astrue***, 620 F. Supp. 2d 1002, 1025 (D. Neb. 2009) (stating the VA's disability determination is "entitled to **some** weight and must be considered in the ALJ's decision")).  "If the ALJ rejects the VA's finding disability, reasons should be given to enable a reasoned review by the courts." ***Brown***, at * 6 (**quoting *Hamel***, 620 F. Supp. 2d at 1025.  When an ALJ fails to provide a rationale for rejecting the VA's determination, he has committed reversible error.  **See**

---

[7] The ALJ also referred to reports from medical professionals who expressed doubt regarding Baker's credibility as a factor supporting his decision (AR. 21-23).  Baker's credibility is discussed below.

*Morrison v. Apfel*, 146 F.3d 625, 628 (8th Cir. 1998) (ruling the ALJ failed to account for the VA's disability determination when the VA undertook an "extensive physical medical examination" of the claimant spanning over thirty pages and when the finding was consistent with those of another governmental agency). However, an ALJ has not committed reversible error even if the ALJ fails to properly account for certain evidence, so long as there exists evidence to the contrary with which the ALJ relied. **See** *Buckner v. Astrue*, 646 F.3d 549, 559-60 (8th Cir. 2011).

The Commissioner concedes the ALJ failed to explicitly address the VA's finding Baker is disabled. **See** Filing No. 20 - Brief p. 22. Indeed, nowhere in the ALJ's report did he mention the VA's disability determination. However, the VA's decision was prefaced, in large part, on only two physical examinations; Baker's visit to the VA audiologist on December 4, 2010, and his evaluation by Dr. Witkowski on January 26, 2011. **See** AR. 482. The VA decision regarding non-service benefits does not refer to hearing impairments, leaving Baker's VA medical records and the report from Dr. Witkowski as the only remaining information from which the VA could have anchored its determination.

The party who "seeks to have a judgment set aside because of an erroneous ruling carries the burden of showing that prejudice resulted." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009). Here, the ALJ directly assessed the evidence underlying the VA's non-service related disability determination: Dr. Witkowski's report and other VA records. **See** AR. 20-21, 482. As discussed above, the ALJ weighed Dr. Witkowski's findings against the record as a whole and determined his opinion was predicated on little other than Baker's subjective complaints. Review of Baker's entire medical history after October 30, 2008—including the same records relied upon by the VA as a part of the VA's disability determination—led the ALJ to conclude Baker was not disabled. Because the ALJ explicitly discounted Dr. Witkowski's opinion and accounted for the same evidence with which the VA made its non-service disability determination, the ALJ constructively addressed the substance of the VA's findings. **See** *Pelkey v. Barnhart*, 433 F.3d 575, 579-80 (8th Cir. 2006) (holding "[a]lthough [the ALJ] did not specifically mention the [VA's assessment], the ALJ did not err because he fully considered the evidence underlying the VA's final conclusion"). Clearly Baker cannot argue he was

prejudiced by the ALJ's failure to specifically mention the VA's decision when the ALJ expressly evaluated the very same information from which the VA relied.  Although the ALJ did not specifically refer to the VA's disability determination in his final decision, the ALJ accounted for the same evidence used by the VA, effectively avoiding any prejudice against Baker.

## C.    Baker's Tinnitus

Baker argues the ALJ committed reversible error because the ALJ declined to categorize his tinnitus as severe.  **See** Filing No. 19 - Brief p. 14, 15.  Specifically, he argues the ALJ erred in failing to consider how Baker's tinnitus affects his ability to concentrate and by not requesting clarification on the matter.  ***Id.*** at 15.

Disability claimants may only receive benefits if their impairments are severe. Step two in the ALJ's disability analysis requires the ALJ to assess whether the claimant has a severe impairment.   20 C.F.R. § 404.1520(c).   "If [the claimant has] an impairment(s) which meets the duration requirement and is listed in appendix 1 or is equal to a listed impairment(s), [the ALJ] will find [the claimant] disabled . . . ." ***Id.*** § 404.1520(d).   "If [the claimant does] not have any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities, [the ALJ] will find that [the claimant does] not have a severe impairment and [is], therefore, not disabled . . . ."   ***Id.*** § 404.1520(c); ***Page v. Astrue***, 484 F.3d 1040, 1043 (8th Cir. 2007).  Basic work activities include:

> 1. Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> 2. Capacities for seeing, hearing, and speaking;
> 3. Understanding, carrying out, and remembering simple instructions;
> 4. Use of judgment;
> 5. Responding appropriately to supervision, co-workers and usual work situations; and
> 6. Dealing with changes in a routine work setting.

***Id.*** §§ 404.1521(b), 416.921(b).  The claimant bears the burden of demonstrating the severity of his or her impairments.  ***Kirby v. Astrue***, 500 F.3d 705, 707-08 (8th Cir. 2007).  Similarly, if the ALJ commits an error, the claimant must demonstrate the error was material to his claim.  ***Byes v. Astrue***, 687 F.3d 913, 917 (8th Cir. 2012).  "To show

an error was not harmless, [the claimant] must provide some indication that the ALJ would have decided differently if the error had not occurred." *Id.* (citing *Van Vickle v. Astrue*, 539 F.3d 825, 830 (8th Cir. 2008)).

The Commissioner concedes the ALJ did not address Baker's tinnitus, though the Commissioner again asserts the result was harmless error. **See** Filing No. 20 - Brief p. 24. The ALJ's decision did fail to mention Baker's tinnitus. However, this court "reviews the record to ensure that an ALJ [did] not disregard evidence or ignore potential limitations, but [this court does] not require an ALJ to mechanically list and reject every possible limitation." *McCoy v. Astrue*, 648 F.3d 605, 614-15 (8th Cir. 2011) (citing *Depover v. Barnhart*, 349 F.3d 563, 567 (8th Cir. 2003)). Although the VA determined Baker's tinnitus was somewhat disabling, the VA's decision clearly established the benefits it granted Baker related to his service (AR. 482). Baker was discharged in August of 1978, yet later worked as a material handler, circuit board supervisor, wholesale sales representative, crane operator, and janitorial services supervisor (AR. 50, 582, 485-486). During his December 4, 2010, audiology examination, Baker told Dr. Brenda Hoover he believed his tinnitus began during service and has remained with him since (AR. 853). Thus, even according to Baker, he was able to perform his post-service jobs despite suffering from recurring tinnitus.

Even if Baker does struggle to concentrate due to his tinnitus, such a limitation cannot enjoy a severe designation given the limitation never precluded him from working in the past.[8] For the same reason, the ALJ was not required to analyze how Baker's tinnitus operates as a factor among Baker's other impairments. Additionally, Baker never points to any evidence suggesting the ALJ would have decided his case differently had he specifically addressed the tinnitus. Moreover, Baker failed to advance any evidence demonstrating the ALJ was confused or needed clarification regarding his diagnosis. **See** Filing No. 19 - Brief p. 14-15. Accordingly, the ALJ did not err by declining to seek additional opinions on the matter and any lack of explicit reference to Baker's tinnitus by the ALJ was harmless.

---

[8] Baker argues the ALJ failed to account for the fact he stated the ringing in his ears was louder during a September 5, 2012, visit to the VA, resulting in reversible error. **See** Filing No. 21 - Reply Brief p. 4. Baker however, does not supplement this assertion with medical evidence from anywhere in the record. Without medical evidence to substantiate his allegation, Baker's claim devolves into nothing more than a subjective complaint; a category of evidence properly addressed by the ALJ.

D.      **Baker's Credibility and Complaints of Pain**

Baker argues the ALJ erred by finding Baker's testimony was not credible.  **See** Filing No. 19 - Brief p. 20-22.  Baker also contends the ALJ did not properly account for his complaints of pain when making his RFC determination.  **See** Filing No. 19 - Brief p. 15, 16.

When a claimant's impairment lay beyond the ambit of Appendix 1 and requires further analysis to make a disability determination, the ALJ must calculate the claimant's RFC.[9]   20 C.F.R. § 416.905.  The RFC assessment is made by analyzing medical evidence and any other relevant evidence on record.  20 C.F.R. § 416.945(a)(3).  An ALJ must consider all of the claimant's symptoms and the extent to which these symptoms are consistent with objective evidence.  20 C.F.R. §§ 404.1529, 416.929; SSR 96-4p.  If the claimant demonstrates there is an underlying medically determinable physical impairment that can reasonably be expected to produce the claimant's pain or symptoms, the ALJ then considers the intensity, persistence, and limiting effects of the claimant's symptoms.  **Id.**  Whenever statements about pain or other symptoms are not substantiated by objective medical evidence, the ALJ is entitled to measure the claimant's credibility.  SSR 96-7p.

"Among the considerations the ALJ takes into account when determining a claimant's RFC is the claimant's subjective complaints of pain."  **Perks v. Astrue**, 687 F.3d 1086, 1092 (8th Cir. 2012).  When considering the claimant's subjective complaints of pain, the ALJ evaluates "(1) the claimant's daily activities, (2) the duration, frequency and intensity of pain, (3) precipitating and aggravating factors, (4) the dosage, effectiveness and side effects of any medication, and (5) functional restrictions."  **Teague v. Astrue**, 638 F.3d 611, 615 (8th Cir. 2011) (**citing Polaski v. Heckler**, 739 F.2d 1320, 1322 (8th Cir. 1984)).   "The ALJ may properly discount the claimant's testimony where it is inconsistent with the record."  **Id.** (citation omitted).  "The ALJ is not required to discuss methodically each **Polaski** consideration, so long as he acknowledged and examined those considerations before discounting a claimant's subjective complaints."  **Renstrom v. Astrue**, 680 F.3d 1057, 1067 (8th Cir. 2012).

---

[9] The RFC signifies the most a claimant can do, despite his limitations.  20 C.F.R. § 416.945(a)(1).

"Another factor to be considered is the absence of objective medical evidence to support the complaints, although the ALJ may not discount a claimant's subjective complaints solely because they are unsupported by objective medical evidence." *Halverson v. Astrue*, 600 F.3d 922, 931-32 (8th Cir. 2010).  "A disability claimant's subjective complaints of pain may be discounted if inconsistencies in the record as a whole bring those complaints into question."  *Gonzales v. Barnhart*, 465 F.3d 890, 895 (8th Cir. 2006).  Additionally, "[t]he credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts."  *Baldwin v. Barnhart*, 349 F.3d 549, 558 (8th Cir. 2003).  "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [the courts] will normally defer to the ALJ's credibility determination."  *Renstrom*, 680 F.3d at 1065.

The ALJ in this case specifically referenced his obligation to consider Baker's symptoms as a part of his RFC determination.  **See** AR. 17.  In fact, the ALJ expressly noted Baker suffered from medically determinable impairments which could reasonably be expected to produce his symptoms**.  See** AR. 22.  However, in assessing the intensity, persistence, and limiting effects of Baker's symptoms, the ALJ determined Baker's subjective complaints of pain were not credible because they were contradicted by the record.  *Id.*

The ALJ devoted an entire subsection in his decision to Baker's credibility, concluding Baker's reported degree of pain was inconsistent with objective evidence from the record.  **See** AR. 21-23.  Specifically, the ALJ's decision finding Baker incredible was predicated on:  (1) Baker performing household and daily living tasks, suggesting a higher RFC; (2) Baker providing contradictory statements regarding the frequency of his muscle relaxer and traction therapy usage; (3) Baker's lack of income during years in which he was not seeking benefits, casting doubt on his motivation to work; (4) Baker alleging crippling pain inconsistent with information from his 2009 MRI; and (5) Dr. Armstrong's belief Baker was a malingerer with respect to claimed psychological impairment.  **See** *id.*  Baker asserts the ALJ improperly relied on testimony taken out of context, specifically Baker's comments concerning his use of traction therapy.  **See** Filing No. 19 - Brief p. 21.  Even if this were true, the ALJ still articulated numerous reasons for questioning Baker's credibility, each of which were

supported by the record.[10]   Further, the ALJ factored in reports from various medical professionals throughout Baker's VA treatment history to calculate his RFC, even explicitly recognizing Baker would need breaks throughout the day to accommodate his condition.  **See** AR. 16-17.  Consequently, the ALJ's decision not to find Baker credible was supported by substantial evidence of record.

Baker's argument the ALJ failed to consider his subjective complaints of pain when making an RFC determination falls short as well.  As discussed above, the record clearly supports the ALJ's finding Baker was incredible.  Because Baker was incredible and the record did not otherwise support his complaints of pain, the ALJ was not required to assess the complaints.

### E.   Baker's Obesity

Baker asserts the ALJ erred by failing to assess Baker's obesity and its effect on his ability to perform physical activity within the work environment.  **See** Filing No. 19 - Brief p. 16, 17.  Baker contends the ALJ briefly mentioned his obesity, but neglected to consider SSR 02-1p regarding how to evaluate obesity.  ***Id.***

The ALJ is required to craft a claimant's RFC based on the entirety of the record evidence, accounting for limitations which could combine to create a disability.   20 C.F.R. §§ 404.1545, 416.945.   ALJ's are not required however, to account for every theoretical combination of the claimant's limitations; the ALJ needs only to assess the record as a whole.  **See** ***Barnes v. Social Sec. Admin.***, 171 F.3d 1181, 1183 (8th Cir. 1999) (affirming an ALJ's conclusion the record as a whole did not suggest disability stemming from a combination of impairments).  Additionally, "Social Security Rulings are agency rulings 'published under the authority of the Commissioner of Social Security and are binding on all components of the Administration.'"  ***Sullivan v. Zebley***, 493 U.S. 521, 530 n.9 (1990) (**quoting** 20 C.F.R. § 422.408 (1989)).  Social Security Rulings are not binding or conclusive on the courts, but they are entitled to deference to the extent they are consistent with the Social Security Act and regulations.  ***Minnesota v. Apfel***, 151 F.3d 742, 748 (8th Cir. 1998); ***Jones v. Barnhart***, 335 F.3d 697, 703-04

---

[10] In addition to those specifically mentioned by the ALJ, the record also indicates Dr. Newman had reservations about whether Baker was feigning symptoms.  **See** AR. 969.

(8th Cir. 2003) ("We generally give deference to the agency's rulings on its own regulations."); **see *Ferguson v. Comm'r of Social Sec.*,** 628 F.3d 269, 272 n.1 (6th Cir. 2010).   ALJ's should make an assessment "of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment."   SSR 02-1p, p. 6.   To demonstrate reversible error under SSR 02-1p, a claimant must specifically point to additional work-related limitations beyond those accounted for by the ALJ.   ***McNamara v. Astrue*,** 590 F.3d 607, 611-12 (8th Cir. 2010); **see also *Anderson v. Barnhart*,** 344 F.3d 809, 814 (8th Cir. 2003) (holding claimant waived his right to argue obesity as a disabling factor when he "never alleged any limitation in function as a result of his obesity in his application for benefits or during the hearing").

While obesity can impose significant work-related limitations, substantial evidence from the record demonstrates the ALJ adequately accounted for Baker's obesity.   First, the ALJ expressly noted his obligation to assess Baker's obesity.   **See** AR. 15-16.   Second, in his decision, the ALJ referenced Baker's attempted and actual weight loss, focusing specifically on Baker's own statements and the reports of Drs. Knosp and Reed.   **See** AR. 19-21, 556-563, 643, 1050.   The ALJ also relied upon the reports of other medical professionals who considered Baker's weight.   **See** AR. 17-18; 899, 979-80.

Further supporting the ALJ's determination is the fact Baker never made mention of his obesity ever affecting his ability to work at any of the four hearings before the ALJ,[11] nor did he argue it in his brief; a requirement for reversal clearly contemplated by ***McNamara***.   Equally fatal to Baker's argument, he made continual claims he was losing weight as a result of exercising yet simultaneously asserted his symptoms either persisted or worsened.   Accordingly, there is substantial evidence in the record demonstrating Baker's obesity was not a severe impairment on its own, or in combination with other impairments.   Also, the ALJ's decision satisfactorily accounted for Baker's obesity as a part of his RFC construction.

---

[11] During his first hearing before the ALJ, Baker acknowledged doctors suggested he lose weight in lieu of undergoing surgery (AR. 133-134).   Nevertheless, Baker still failed to explain how his obesity affected his ability to work.

F.    **VE Hypothetical**

Baker contends the ALJ erred by providing the VE with an incomplete and inaccurate hypothetical question.  **See** Filing No. 19 - Brief p. 18, 19.

An ALJ's hypothetical question to the VE constitutes substantial evidence when it includes all the claimant's credible impairments.  *Hulsey v. Astrue*, 622 F.3d 917, 922 (8th Cir. 2010).  The ALJ may rely on vocational expert testimony as "substantial evidence only when the testimony is based on a correctly phrased hypothetical question that captures the concrete consequences of a claimant's deficiencies."  *Robson v. Astrue*, 526 F.3d 389, 392 (8th Cir. 2010).  The ALJ may omit alleged impairments from the hypothetical question when the record does not support the claimant's contention the impairment is a significant restriction on performing gainful employment.  *Buckner v. Astrue*, 646 F.3d 549, 561 (8th Cir. 2011).

Baker argues when formulating a hypothetical to ask the VE, the ALJ failed to account for the opinions of PA Davis and Dr. Witkowski.  **See** Filing No. 19 - Brief p. 18, 19.  Baker's argument is fundamentally flawed however, because for the reasons set forth above, the ALJ gave sufficient weight to Dr. Witkowski's and PA Davis' opinions when fashioning Baker's RFC.  The ALJ concluded Dr. Witkowski's and PA Davis' opinions were not supported by the record as a whole and crafted Baker's RFC accordingly.  The ALJ asked the VE to consider a hypothetical claimant who could perform tasks commensurate with Baker's RFC.  **See** AR. 54-55.  The VE explained an individual with identical abilities could perform Baker's past work as a wholesale sales representative, in some circumstances a circuit board supervisor, or alternatively, an information clerk (AR. 57, 59).  The ALJ's RFC formulation is consistent with the record as a whole and substantial evidence supports the ALJ's conclusion.  Accordingly, the ALJ's hypothetical question posed to the VE was accurate and complete.

## CONCLUSION

For the reasons stated herein, the court concludes the ALJ's decision, which represents the final decision of the Commissioner of the SSA, is supported by

substantial evidence in the record as a whole and should not be reversed or remanded. Accordingly, the Commissioner's decision is affirmed.

**IT IS ORDERED:**

The Commissioner's decision is affirmed, the appeal is denied, and judgment in favor of the defendant will be entered in a separate document.

DATED this 22nd day of July, 2014.

BY THE COURT:

s/ Thomas D. Thalken
United States Magistrate Judge